ARKANSAS NATURAL GAS CORPORATION v. SECURITIES AND EXCHANGE COMMISSION.

No. 11052.

Circuit Court of Appeals, Fifth Circuit.

March 22, 1946.

Rehearing Denied May 15, 1946.

598

Henry C. Walker, Jr., of Shreveport, La., and John O. Wicks, of Pittsburgh, Pa., for petitioner.

Roger S. Foster, Sol., Securities and Exchange Commission, of Philadelphia, Pa., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Under Section 11 of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k, the Securities & Exchange Commission required simplification of the vast public-utility holdings of Cities Service Company, among other things, divesting itself of Arkansas Natural Gas Corporation, also a large holding company; and in turn, ordered the Arkansas Natural Gas Corporation to divest itself of its subsidiary companies engaged mainly in producing, distributing and selling petroleum and its refined products, retaining only its full ownership of its main subsidiary, Arkansas Louisiana Gas Company, with all the latter's businesses as an integrated gas public-utility system. The principal business of Arkansas Louisiana Gas Company is the distribution at retail of natural gas for heat, light and power through 103 distribution plants in east Texas, north Louisiana and Arkansas. This makes it a "gas utility company" under Section 2(a) (4) of the Act, 15 U.S.C.A. § 79b(a) (4), but it also owns gas leases and wells and produces, gathers and transmits gas, and sells some at wholesale. The gas production and transmission facilities and business were allowed to be retained as part of the integrated gas utility system, but the businesses of the holding company's other subsidiaries which produced petroleum in the same territory refined it there and transmitted and sold the products throughout the States of Texas, Arkansas, Louisiana, Kentucky, Tennessee, Alabama, Georgia, Virginia, North Carolina, South Carolina, and Florida, the Commission refused to include in the integrated gas utility system and ordered the holding company, Arkansas Natural Gas Corporation, to divest itself of these.

The Arkansas Natural Gas Corporation petitions this Court to correct the order in two respects only: First, because the Commission declined to say whether it allowed the gas producing and transmission facilities of Arkansas Louisiana Gas Company to be retained in the system because they are a part of the integrated system, or as "other businesses" permitted by Section 11 to be specially retained. Second, because the oil businesses of the other subsidiaries are not also allowed retained.

 1. As to the gas production and transmission facilities and businesses, since they were retained, it would not be material to petitioner on what ground if they alone were involved. It is because the oil production business is carried on in the same territory and under the same general man-

agement, and to some extent by the same crews, it is thought the economies and convenience of the operations would better justify the retention of the oil businesses also if gas production is truly a part and not a mere adjunct of the gas utility system. We do not think the result contended for would follow. Oil production, transmission and distribution is not a public-utility business under the Act. No part of it has any place of right in the integrated systems set up under the Act. There are but two kinds of such systems, Section 2(a) (29). One relates to electricity and may consist of one or more generating plants, transmission lines and distribution utility companies, electric utility companies being themselves defined, Sec. 2(a) (3), as those owning or operating facilities for generation, transmission or distribution of electric energy for sale. By contrast, Sec. 2(a) (4) defines a gas utility company as one that owns or operates facilities for the distribution at retail of natural gas, saying nothing about its production and transmission from the wells; and Sec. 2(a) (29) (B), which treats of an integrated gas public utility system, mentions as composing it one or more gas utility companies, but again does not refer to their producing or transporting their supply of gas. We think the gas wells and pipe lines are not necessarily a part of this integrated system, though very clearly they were proper to be retained as other businesses "reasonably incidental, or economically * * * appropriate to the operations of [the] system," in the words of Section 11(b) (1).

█ 2. The Commission recognized that there were economies in the joint operation of the gas wells and oil wells of the subsidiaries, beginning at exploration and drilling in the same territory, and continuing through some of the managerial expenses. But the contact between oil and gas were mainly in production operations. The businesses were thereafter diverse. The gas business was done in a compact territory in Arkansas and a part of Texas and Louisiana, and conducted from the main office in Shreveport, Louisiana. The oil business, after production and refining, was scattered over eleven large states, and had at no time any connection with the distribution of natural gas at retail, which constitutes the business of a gas public-utility under this Act. The Commission was justified in excluding the oil business

from the integrated gas system, under the provisions of Section 11(b) (1).

█ That section puts the duty on the Commission to require petitioner, as a holding company registered under the Act, to limit its operations to "a single integrated public-utility system, and to such other businesses as are reasonably incidental, or economically necessary or appropriate to the operations of such integrated public-utility system." The next words require that the holding company shall be permitted to continue to control additional public-utility systems under certain conditions, which we need not consider since only one system is here involved. The statute then recurs to the subject of "other businesses" in these words: "The Commission may permit as reasonably incidental, or economically necessary or appropriate to the operations of one or more integrated public-utility systems the retention of an interest in any business (other than the business of a public-utility company as such) which the Commission shall find necessary or appropriate in the public interest or for the protection of investors or consumers and not detrimental to the proper functioning of such system or systems." This sentence is not a redefining of the "other businesses" previously mentioned as retainable, but is an enlargement, an addition thereto. In the first mention the operations of the utility system are in the foreground, and what is merely incidental to them, or what is economically necessary or appropriate to them may be retained. In the second mention of other businesses the public interests, and the protection of investors and consumers are in the foreground, and retentions necessary and appropriate to protect these are permissible additionally, if not detrimental to the proper functioning of the system. No case is made here of the public interest or the protection of investors and consumers making necessary the retention of these oil businesses. The Commission we think correctly held they were not reasonably incidental to the gas public utility system, or economically necessary or appropriate to its operations. There was neither unlawfulness nor abuse of discretion in requiring the holding company to divest itself of them.

3. The decisions in North American Co. v. Securities and Exchange Commission, 2 Cir., 133 F.2d 148 and in Engineers Public Service Co. v. Securities and Ex-

change Commission, 78 U.S.App.D.C. 199, 138 F.2d 936 have been urged upon us. Certiorari has been granted in both by the Supreme Court, so that neither stands as a precedent. We have thought best simply to decide this case upon the portions of the Act applicable to it, giving them the meaning which we think the words in their context naturally carry. It would serve no purpose to do more, seeing that broader questions about the Act are now pending before the highest court.

The petition to modify or set aside the order of the Commission is denied.