RECONSTRUCTION FINANCE CORP. v. LIGHTSEY et al.

No. 6101.

United States Court of Appeals Fourth Circuit.

Argued Oct. 3, 1950.

Decided Nov. 8, 1950.

John F. Williams, Aiken, S. C. (Williams & Busbee, Aiken, S. C., on the brief), for appellant.

J. M. Moorer, Walterboro, S. C., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Appellant, Reconstruction Finance Corporation brought this civil action in the United States District Court for the Eastern District of South Carolina, sitting without a jury. It sued for the recovery of $1,844.50 paid appellees, Lightsey Brothers, who are alleged not to be entitled thereto, and interest. Judgment was for Lightsey Brothers (hereinafter called Lightsey) and the Reconstruction Finance Corporation (hereinafter referred to as R. F. C.) brought this appeal.

The Veterans' Emergency Housing Act of 1946, 50 U.S.C.A.Appendix, § 1821 et seq., was designed, among other purposes, to relieve a shortage in veterans' housing and to expedite the production of building materials. Pursuant to the authority of this Act, the Housing Expediter issued certain regulations to stimulate additional production of hardwood flooring by providing for premium payments on production of such flooring above fixed quotas. Under these regulations Lightsey was eligible to receive premiums, and until September 15, 1946, was entitled to apply for a quota for the quarter of August through October, 1946.

On September 12, 1946, Lightsey made application, in duplicate, for such quota. The Expediter entered the quota at the foot of one copy of the application:

"B. If you operate 45 or more eight hour days during the quarter, you are assigned a quarterly Quota of 838 thousand

feet flooring count of Hardwood flooring, of which at least 438 thousand feet flooring count shall be residential flooring.

"C. * * * If you operate less than 45 eight hour days during the quarter your total quota is 9,739 feet per day times the number of 8 hour days operated, but you must produce a *minium* of 130 m. feet of hardwood flooring before you can make a claim."

This quota, dated October 29, 1946, was received by Lightsey on or about October 31, 1946.

By agreement between the parties and in accordance with the regulations of the Housing Expediter, Lightsey was to receive advance payments upon the condition that it make certain reports and keep records sufficient to enable the Government to check upon the accuracy of the transactions. Also, Lightsey was to refund with interest any overpayments made to it; and the Housing Expediter, in the first instance, was to determine this matter of overpayment.

On November 26, 1946, Lightsey filed claim for a contingent premium in the amount of $1,844.50. On January 16, 1947, R. F. C., on the authorization of the Housing Expediter, issued Lightsey a check for $571.80 as preliminary payment. In February, 1947, a Special Agent of the Expediter audited Lightsey's production records and filed his report with the Expediter. The claim was reviewed, and on March 17, 1949, with the authorization of the Expediter, the R.F.C. paid Lightsey the balance of $1,272.70.

Lightsey's production was less than that required under paragraph "B" of the quota, and its right to a premium depended upon compliance with paragraph "C". On September 23, 1947, the Expediter found that Lightsey had failed to keep records from which could be determined the number of eight-hour days operated and the amount of flooring produced each day, and since the premium was necessarily contingent upon such determinations, it was held that Lightsey was not entitled to any premium. Lightsey was informed of this by letter of September 30, 1947. This letter stated

further that action in the matter would be held in abeyance for a period of ten days to permit Lightsey to submit any additional information it deemed appropriate to substantiate its claim. Lightsey, on October 2, 1947, replied as follows: " * * * Since we are still in no better position to get more information, we are considering the matter closed."

This action was brought October 30, 1948, to recover the premium. Lightsey's defense was that it had kept adequate records. After hearing the evidence, the District Court held that the records were sufficient and entered judgment accordingly. A motion for a new trial and/or to alter or amend the judgment was denied.

The holding of the Expediter was, by its terms, a final determination of Lightsey's rights. The ten day period of abeyance was merely to give Lightsey an opportunity to persuade the Expediter to change his mind; Lightsey refused to take advantage of this opportunity. In addition Housing Expediter Appeals Order, as Revised June 6, 1947, established the Appeals Board of the Office of the Housing Expediter. And Lightsey could have had the unfavorable determination reviewed, at his option, either by this Board or by "appropriate officials" of the Office of the Housing Expediter. Lightsey did not pursue these remedies but "(considered) the matter closed."

It is sufficiently clear that appeal, where it exists, rather than collateral attack, is the remedy of parties disappointed by the decisions of quasi-judicial bodies in matters properly before them. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. It is undisputed that the Office of the Housing Expediter was acting here as a lawfully constituted quasi-judicial body, and in a matter over which it properly assumed jurisdiction. The right of appeal within this body was undeniable.

Lightsey's answer to all this is summed up in its brief: "We have examined the testimony given and the exhibits and nowhere is there one iota of proof in the record that Lightsey Brothers did not appeal to the Appeal Board from the finding of the Expediter. We submit that, if this

Court would hold that an appeal to the Appeal Board should have been taken by Lightsey Brothers but was not taken, this Court would have to go outside of the record to so hold."

██ We can find "one iota of proof in the record" that Lightsey did not take this appeal, and that is the letter of October 2, 1947, stating that Lightsey "(considered) the matter closed." Although the implications of this letter are prospective, we think it is a strong indication of what actually happened. Furthermore, it is difficult to see how the R. F. C. can prove that this needle is not in the haystack except by asserting as much. When it would be so extremely difficult, if not impossible, for the R. F. C. to prove its point, and so manifestly simple for Lightsey to prove his, we think it is up to the latter to dispel the inferences that naturally arise from the circumstances. Thus, since Lightsey did not pursue his available administrative review, the finding of the Housing Expediter is conclusive upon Lightsey and is not subject to review by the District Court.

In Utah Fuel Co. v. National Bituminous Coal Commission, 69 App.D.C. 333, 101 F. 2d 426, 428, affirmed 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483, Associate Justice Miller, speaking for the United States Court of Appeals for the District of Columbia, said:

"It is a well established rule that available administrative remedies must be exhausted before judicial review can properly be given, and, that, except as hereinafter noted, preliminary procedural orders of administrative agencies are not subject to judicial review.

"The jurisdictional question whether the order complained of is reviewable is basic and cannot be waived by the parties. One of the important reasons for requiring exhaustion of administrative remedies is to prevent the transfer to courts of duties imposed by law upon administrative agencies. Waivers of such questions in order to secure judicial review cannot give jurisdiction on appeal. 'Primary singleness of action and unity' are imperative, and this would be destroyed by substituting the court for the Commission or by creating a divided authority in the determination of such questions."

██ Even were the action of the Housing Expediter reviewable by the District Court, this case must be reversed for another reason. Administrative action is conclusive on review unless such action is not in accordance with law, is unsupported by competent, material, and substantial evidence, or is arbitrary or capricious. Philadelphia Co. v. Securities and Exchange Commission, 85 U.S.App.D.C. 327, 177 F.2d 720; Montana-Dakota Utilities Co. v. Federal Power Commission, 8 Cir., 169 F.2d 392, certiorari denied 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401; National Broadcasting Company v. United States, D.C., 47 F.Supp. 940.

██ Without going into the details of the sufficiency of Lightsey's records to determine eight-hour days, we think that this issue is at least debatable. Lightsey appears to have arrived at the number of eight hour days by estimating daily production at ten thousand feet and dividing total production by this figure. The Housing Expediter held this process unacceptable because the estimation of daily production in excess of the daily quota necessarily assumed the very point to be established. In its findings of September 23, 1947, the Office of the Housing Expediter discussed this process and the records and found them wanting. This appears to have been an honest attempt to arrive at the truth. It is our opinion that there was sufficient evidence to support his finding, that the action of the Expediter was not arbitrary or capricious, that its finding was in accordance with law and was not clearly erroneous. The Disrict Court, we think, erred again in substituting its judgment for that of the Office of the Housing Expediter. See, Mastrapasqua v. Shaughnessy, 2 Cir., 180 F.2d 999, 1002; Orvis v. Higgins, 2 Cir., 180 F.2d 537, 539.

For the reasons given above, the judgment of the District Court must be reversed and the case remanded to that court with instructions to enter judgment for plaintiff-appellant, Reconstruction Finance Corporation.

Reversed and remanded.