LOUISIANA PUBLIC SERVICE COMMISSION, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 15820.

United States Court of Appeals Fifth Circuit.

June 30, 1956.

Robert A. Ainsworth, Jr., New Orleans, La., Ainsworth & Ainsworth, New Orleans, La., of counsel, for petitioner.

J. Raburn Monroe, Andrew P. Carter, Monroe & Lemann, New Orleans, La., for Louisiana Power & Light Co., intervenor.

David Ferber, Solomon Freedman, Robert N. Hislop, Sp., Counsel, Security & Exchange Comm., Thomas G. Meeker, Gen. Counsel, Security & Exchange Comm., Washington, D. C., for Securities & Exchange Commission.

Daniel James, Cahill, Gordon, Reindel & Ohl, New York City, for Middle South Utilities, Inc., intervenor.

Fred G. Benton, Baton Rouge, La., for The Police Jury of the Parish of Jefferson, intervenor.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is a petition to review an order of the Securities and Exchange Commission denying a petition to reopen and receive new evidence in proceedings which culminated in a Commission order of March 20, 1953, directing a public utility holding company and three of its subsidiaries to dispose of their direct and indirect ownership in certain non-electric properties. The Securities and Exchange Commission opposes the petition for review on the grounds that the denial of a petition to reopen proceedings is not a reviewable order under Section 24(a) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79x, and that, in any event, the petition to reopen was without merit.

The Securities and Exchange Commission issued an earlier order regarding these properties on March 7, 1949, when it approved a plan for the dissolution of the Electric Power & Light Corporation and the creation of Middle South Utilities, Inc., which acquired from the Electric Power & Light Corporation the latter's sole ownership of the Arkansas Power & Light Company, the Louisiana Power & Light Company, and the Mississippi Power & Light Company. It also acquired from the Electric Power & Light Corporation 95.2% of the common stock of New Orleans Public Service, Inc., and all of the securities of the Gentilly Development Company, a non-utility land company. The Securities and Exchange Commission, in approving the plan, reserved jurisdiction to make further findings under Section 11 of the Act, 15 U.S.C.A. § 79k, regarding the integrated character of the electric properties of Middle South's subsidiaries, and the retainability of non-electric properties by these companies.

Subsequent to this order, the Arkansas Power & Light Company and the Mississippi Power & Light Company disposed of nearly all their non-electric properties and thereafter engaged almost exclusively in electric operations. The Gentilly Development Company disposed

of its land and had only cash as a major asset. The Louisiana Power & Light Company, however, retained both electric and gas properties, and New Orleans Public Service, Inc., continued to engage in electric, gas and transportation operations. In January, 1953, the Securities and Exchange Commission issued an order convening a hearing pursuant to Section 11(b) (1) of the Act, 15 U.S.C.A. § 79k(b) (1), to decide, inter alia, whether Middle South Utilities, Inc. and the Louisiana Power & Light Company should be required to dispose of the gas utility and non-utility assets of the Louisiana Power & Light Company, and if so, upon what terms and conditions. The named respondents were Middle South Utilities, Inc., the Arkansas Power & Light Company, the Mississippi Power & Light Company, and New Orleans Public Service, Inc. A copy of the order was served upon the petitioner here, the Louisiana Public Service Commission, by registered mail. However, the Louisiana Public Service Commission did not appear, nor did any other public body or group of public security holders appear with regard to the retainability of gas properties by the Louisiana Power & Light Company.

On March 20, 1953, the Securities and Exchange Commission issued its findings and order, which required Middle South Utilities, Inc., the Arkansas Power & Light Company, the Louisiana Power & Light Company, and the Mississippi Power & Light Company to dispose of their direct and indirect ownership in non-electric properties. New Orleans Public Service, Inc., was allowed to retain its gas and transportation properties along with its electric properties, in view of the strong desire of the City of New Orleans for New Orleans Public Service, Inc. to continue unified operations, and the special character of the franchise and regulatory system in that city.

Insofar as is pertinent here, the effect of the order was to require Middle South Utilities, Inc., the Arkansas Power & Light Company, the Louisiana Power & Light Company, and the Mississippi Power & Light Company to dispose of certain steam and water properties owned by the three subsidiaries. It likewise required Middle South Utilities, Inc. and the Louisiana Power & Light Company to divest themselves of the latter's gas properties.

No petition for review of this order was filed, and the Securities and Exchange Commission set March 20, 1955 as the deadline for compliance therewith by Middle South Utilities, Inc. and the Louisiana Power & Light Company. On November 10, 1954, the Louisiana Power & Light Company and the Louisiana Gas Service Corporation filed a joint application-declaration with the Securities and Exchange Commission, proposing that the newly incorporated Louisiana Gas Service Corporation acquire all the non-electric properties of the Louisiana Power & Light Company. The Louisiana Power & Light Company was to own all the common stock of the Louisiana Gas Service Corporation. Thereafter the petitioner here, the Louisiana Public Service Commission, requested a public hearing on the matter and also asked that the Securities and Exchange Commission reopen the record in the proceeding which had resulted in the divestment order. Upon the suggestion of the Securities and Exchange Commission, petitioner filed a detailed offer of proof and a brief in support of its request. After oral argument, the Commission, by order of September 19, 1955, denied the Louisiana Public Service Commission's request that the prior proceeding be reopened. The Louisiana Public Service Commission here challenges the legality of this order.[1]

1. The Louisiana Power & Light Company intervened in this court, reiterating the arguments of the Louisiana Public Service Commission. Middle South Utilities, Inc. also intervened, stating that it was in accord with the views expressed by the petitioner and the Louisiana Power & Light Company, but strongly op-

■ We think the order of September 19 is reviewable. The order here involved is not of the type dealt with in *Wayne United Gas Co. v. Owens-Illinois Glass Co.*, 300 U.S. 131, 57 S.Ct. 41, 81 L.Ed. 557, but is an order based on a procedure specifically authorized by § 79k(b) of the statute.[2] This provision was availed of by the petitioner here by requesting that the record be reopened. The fact that the Securities and Exchange Commission considered the petition, suggested that petitioner file an offer of proof, considered the proof thus offered, and made a specific finding that "no grounds for questioning our earlier conclusion * * * have been indicated" demonstrates that the Commission considered this procedure as a petition *to modify the earlier order.* The order denying this request is expressly reviewable.[3]

■ The Commission contends that the power to revoke or modify upon a finding that the conditions upon which the order was predicated *do* not exist comes into play only if a change in conditions has occurred after the entry of the earlier order.[4] The action of the Securities and Exchange Commission here indicates that it considered that it had the duty to consider the proof that related to the conditions that existed as of the time the earlier order was entered. The language of the statute does not precisely state whether the utility can ask for a modification of the earlier order by a subsequent showing that the facts were not as they were taken to be when the order was issued or whether a modification can be had only upon a showing that conditions have changed subsequent to the earlier order. The language is susceptible of the construction, however, that if, in fact, it can be shown that the conditions on which the order was predicated were not truly the actual conditions, then a modification may be sought and obtained. We hold that such modification may be based on the facts as they existed at the time of the order which is to be modified.

■ A review of action by the Securities and Exchange Commission denying such modification is, as we have noted, expressly provided for. Such review is thus not circumscribed by the rules applying to review of discretionary acts. In passing on any petition for revocation or modification, as provided for in § 79k (b) the normal standards by which an administrative tribunal arrives at its decision would, of course, apply. There must be a basis in fact for the decision and the facts must be applied in accordance with the proper rules of law.

Petitioner here contends that these standards were not met because, so it contends, the Commission misconstrued § 79k(b) (1)[5] in holding that the only

---

posing a reopening of the record which would result in reconsideration of the status of the entire Middle South System; in effect, it desired a reconsideration only of that part of the Securities and Exchange Commission's divestment order which required the Louisiana Power & Light Company and itself to dispose of the Louisiana Power & Light Company's gas properties.

2. With regard to § 11(b) proceedings, the Act provides: "The Commission may by order revoke or modify any order previously made under this subsection, if, after notice and opportunity for hearing, it finds that the conditions upon which the order was predicated do not exist. Any order made under this subsection shall be subject to judicial review as provided in section 79x of this title." 15 U.S.C.A. § 79k(b).

3. See last sentence of section 79k(b), f.n. 2, supra.

4. Extensive authority for this proposition is cited in the nature of orders by the Securities and Exchange Commission. No court decision is cited to support this construction. The language of the court's opinion in *American Power & Light Co. v. S.E.C.*, 329 U.S. 90, at page 121, 67 S.Ct. 133, 91 L.Ed. 103, seems to indicate to the contrary.

5. This section provides that the Commission *shall* "permit a registered holding company to continue to control one or more additional integrated public-utility systems, if, after notice and opportunity for hearing, it finds that—

"A. Each of such additional systems cannot be operated as an independent system without the loss of substantial econ-

company whose loss of substantial economies was to be considered was the projected gas company; that the loss of substantial economies to the parent Louisiana Power & Light Company resulting from the severance is not to be considered. The respondent agrees that such is its position. It says that it has consistently construed this section in the challenged manner. The Securities and Exchange Commission says in its brief that: "The meaning of this clause is clear from the legislative history and from Securities and Exchange Commission and court decisions." In support of its position it quotes from the statement of the managers on the part of the House accompanying the Conference Report [6] and a statement made by a senator on the floor of the Senate *after* the passage of the bill, but before the President had signed it.[7] It also cited Philadelphia Company et al., 28 S.E.C. 35, 52, and General Public Utility Corporation, Holding Company Act Release No. 10982, as its prior decisions on the point, and cited Philadelphia Company v. S.E.C., 85 U.S. App.D.C. 327, 177 F.2d 720, 724, 725, as accepting without discussion the Securities and Exchange Commission's views on the matter.

We think that the language of a statute should be construed, if possible, by taking the usual intendment of the words without reference to such aids to construction as the legislative history, which may be helpful only if the language itself is not clear.

Giving to the language of § 79k (b) the meaning normally attributed to the words used, we think it quite clear that if, in fact, there is a loss of substantial economies either to the separated utility or to the parent company, then the proviso in clause A is satisfied, for in such event it is clear that "each of such additional systems [here the gas system] cannot be operated * * * without the loss of substantial economies [to the parent company] which can be secured by the retention of control by such holding company of such system." Since the term "loss of substantial economies" is not expressly restricted in the statute to the economies relating to the operation of the additional companies, but is in terms broad enough to include the loss of substantial economies to the holding company as well, it would require judicial legislation for the court to cut it down as contended for by the Securities and Exchange Commission.

Neither the legislative history, if we are to consider that, nor the one court decision, relied on by the respondent, discussed this precise point. We cannot permit our conclusion as to the correct construction of the Act to be overborne by discussion by another court of other features of the Act from which a contrary construction can at most only be inferred. This is too important a part of the section to be interpreted by such method. Furthermore, while we recognize the merit of respondent's contention that the interpretation placed on a law by the agency enforcing it is persuasive, no one will contend that it is not, after all, the duty of the courts to construe the acts of Congress, even if such construction differs with long accepted administrative policy.

We do not make any findings here contrary to those arrived at by the Securities and Exchange Commission. We

---

omies which can be secured by the retention of control by such holding company of such system."

6. This clause was inserted for the first time by the Conference Committee. This statement, as quoted in respondent's brief, was that it was a " * * * provision to meet the situation when a holding company can show a real economic need on the part of additional integrated systems for permitting the holding compa-

ny to keep these additional systems. * * * "

7. This statement made by Senator Wheeler, quoted by the respondent's brief, was that the effect of the clause "would be to permit the Commission to allow a holding company to control more than one integrated system if the additional systems * * * were incapable of economic operation * * *."

do decide that in making its findings on the crucial question of loss of substantial economies the Securities and Exchange Commission refused to give weight to important facts which, if as alleged by petitioner, would have presented an entirely different picture.[8]

■■ There remains the question as to what is meant by the language "substantial economies." The Commission contends that economies are not substantial unless their loss "would cause a serious economic impairment of the system" such as "to render it incapable of independent economical operation." It cites Engineers Public Service Co. v. S.E.C., 78 U.S.App.D.C. 199, 138 F.2d 936, 944, and Philadelphia Co. v. S.E.C., 85 U.S. App.D.C. 327, 177 F.2d 720, 725, as supporting this proposition. We think neither case accepts the contention of the Securities and Exchange Commission that the words "substantial economies" must be so construed. The Engineers Public Service Co. case says " 'substantial economies' must mean, as was said in North American Company v. S.E.C., 2 Cir., 133 F.2d 148, 152, 'important economies.' " To be sure there was a dissent in which Judge Soper, who wrote the opinion, favored a reversal of the order of the Securities and Exchange Commission because he thought the undisputed facts constituted a showing of "substantial economies." The majority merely felt that the evidence was not conclusive, and therefore declined to reverse the finding of the Commission. There was no specific holding by the court that the Commission's formula as to what was meant by "substantial economies" was universally applicable. Much the same is true of the later decision in the Philadelphia Company case. There the court affirmed an order of the Securities and Exchange Commission, in which its limiting formula had been applied.

The court there said " 'substantial' is a relative and elastic term." In the context of the particular case, the court then said: "We cannot say the Commission's understanding of the term 'substantial economies' is wrong."

We are convinced that the formula proposed by the Commission is not one that is to be inflexibly used in the application of clause A of the saving section. We think, as has been said by the Court of Appeals for the Second Circuit in North American Company v. S.E.C., 2 Cir., 133 F.2d 148, 152, and as stated in the Engineers Public Service Company case, supra, that the term "substantial economies" means important economies. The question of their importance must, of course, be determined by the bearing they have on the ability of the two systems to continue in the serving of the two commodities in general demand without substantial change in policy, serving practically in the same way, making substantially the same gains, suffering substantially the same losses.[9]

Finding as we do that the Commission excluded from its consideration what, if any, economies might be lost to Louisiana Power and Electric Company in its application of Clause A, and finding as we do that the Commission's concept as to what constituted "substantial economies" was too rigid, it becomes necessary for us to grant the relief requested by the petitioner and remand this proceeding to the Securities and Exchange Commission for its further consideration in the light of this opinion.

An intervention has been filed in this case by Middle South Utilities, Inc., in which the intervenor strenuously objects to any action here that would cause or authorize the reopening by the Securities and Exchange Commission of the order of March 20, 1953, as relates to the Middle South system as a whole. The further consideration to be given to this

---

8. The offer of proof included detailed computations showing anticipated losses of $684,377 of economies to the Electric Company following the dismemberment, which, when added to computed losses of $272,816 to the gas utility, constituted a sizeable, if not a substantial, figure.

9. See Engineers Public Service Co. v. S.E.C., 78 U.S.App.D.C. 199, 138 F.2d 936, 944.

matter by the Securities and Exchange Commission is restricted to the relations between Middle South, the Louisiana Power and Electric Company, and the gas system, and nothing said in this opinion shall be taken to authorize a reconsideration of any other features of the March 20, 1953 order.