## CALLANAN ROAD IMPROVEMENT CO. *v.*
## UNITED STATES ET AL.

No. 488.   Argued April 8, 1953.—Decided May 4, 1953.

*William A. Roberts* argued the cause for appellant. With him on the brief was *James E. Wilson.*

*William J. Hickey* argued the cause for the United States and the Interstate Commerce Commission, appellees.   With him on the brief were *Acting Solicitor General Stern, Acting Assistant Attorney General Hodges,*

*Ralph S. Spritzer, Daniel M. Friedman* and *Edward M. Reidy.*

*R. Granville Curry* argued the cause for the Cornell Steamboat Company, appellee. With him on the brief was *Frederick M. Dolan.*

MR. JUSTICE MINTON delivered the opinion of the Court.

In 1941, one Joseph R. Hutton applied to the Interstate Commerce Commission for a permit to operate as a contract carrier by water between points on Long Island Sound, New York Harbor, the Hudson River, the New York State Barge Canal System, the Niagara River, and contiguous ports. In the alternative, he prayed a certificate of convenience and necessity if he be found to be a common carrier. The application was a "grandfather" clause proceeding under § 309 of Part III, Water Carriers, of the Interstate Commerce Act, 54 Stat. 941, 49 U. S. C. (1946 ed.) § 909.

The Commission, after hearing and investigation, made findings of fact and conclusions of law thereon to the effect that for 37 years Hutton had been in operation; that "[h]e owns and manages 1 steam power boat of about 240 horsepower, and 4 barges, all of which are operated as a unit. The power boat is used to tow the barges but also carries about 150 gross tons of freight. On occasion other barges are rented or chartered for operation in applicant's fleet." It was further found that during and since 1939 and 1940, "applicant's operation has been that of a common carrier of commodities generally between points on New York Harbor, the Hudson River below its junction with the New York State Barge Canal, the New York State Barge Canal between the Hudson River and the Niagara River including the Oswego branch, and the Niagara River." The Commission further found that the applicant was in operation January 1, 1940, the crit-

ical date provided in § 309 for "grandfather" proceedings, and by reason of his long, continuous operation, public convenience and necessity would be served by continuance of such operation, and specifically found:

"We find that applicant is a common carrier by water; that public convenience and necessity require operation by applicant as a common carrier in interstate or foreign commerce, of commodities generally, between points on New York Harbor as determined in Ex Parte No. 140, points on the Hudson River below its junction with the New York State Barge Canal, the New York State Barge Canal between the Hudson River and the Niagara River including the Oswego branch, and the Niagara River; that applicant is fit, willing and able properly to perform said transportation; and that applicant is entitled to a certificate authorizing such operation, subject, however, to general conditions which are necessary to carry out, with respect to such operation, the requirements of Part III of the act and the orders, rules, and regulations of the Commission thereunder."

The Commission entered an order on July 17, 1942, effective October 5, 1942, granting the certificate of convenience and necessity to Hutton. This order recited the fact of the above findings and incorporated them by reference. 250 I. C. C. 804.

Thus it will be seen that the Commission found the operations of Hutton to be those of a common carrier by water of commodities generally in self-propelled vessels which he owned and which he also used to tow barges he owned, rented, or chartered. There is no finding that his operations included the towing of barges which he did not own, rent, or charter. The certificate was accepted by Hutton, and, as far as appears on this

record, he operated under it until March 7, 1944, in the same manner as he had before.

On March 7, 1944, the Commission of its own motion opened the record in Hutton's original application and, after reconsidering its former findings, specified the type of vessels to be used in the exercise of its authority theretofore granted. 260 I. C. C. 804. The Commission's order of March 7, 1944, in pertinent part reads as follows:

> "That public convenience and necessity require the continuance of operation by applicant as a common carrier by water, by self-propelled vessels and by non-self-propelled vessels with the use of separate towing vessels in interstate or foreign commerce, in the transportation of commodities generally between points in the area defined by the order of the Commission . . . ."

This amended certificate, which limited Hutton to the identical operations he had long carried on and upon which his § 309 rights were authorized, was accepted by him without question, and he continued to operate under it until his death several months later.

The Callanan Road Improvement Company, the appellant here, sought to purchase the amended certificate from Hutton's administratrix for operations limited to the Hudson River and New York Harbor. By § 312 of the Interstate Commerce Act, 54 Stat. 944, 49 U. S. C. (1946 ed.) § 912, the Interstate Commerce Commission's authorization is required for such a transfer. An application for approval was filed before the Commission by the appellant and the administratrix. After hearing, the Commission by order dated August 18, 1947 (265 I. C. C. 813), authorized the transfer of the amended certificate to the appellant in the following words:

> "It is further ordered, That, following consummation of the sale to the transferee of the operating

rights covered by said amended certificate, said transferee may perform to the extent above described, the water-carrier service heretofore authorized under said amended certificate dated March 7, 1944, in No. W–103."

On February 5, 1948, the Commission issued an amended certificate to the appellant, pursuant to its order of August 18, 1947. Thus, the appellant sought and received a transfer of the amended certificate of March 7, 1944, limited by consent as to waters to be operated upon.

On January 5, 1951, the appellant filed a petition with the Commission for interpretation of the amended certificate it had purchased from Hutton's administratrix. Cornell Steamboat Company, engaged only in towing on the waters in question, appeared and offered evidence against the appellant. In this proceeding, the appellant claimed the right under its certificate to engage in towing service as distinguished from freighting service. It is and was the contention of the appellant that under the original certificate issued to Hutton in 1942, the latter was a common carrier of goods generally, and that the limitations or modification of this certificate by the order of the Commission of March 7, 1944, which denied Hutton the right to engage in towing services was unauthorized, and, as transferee, the appellant was entitled to engage in towing service and to promulgate and file tariffs therefor. The Commission after hearing held the appellant was not entitled to engage in the service of towing and cancelled the tariffs filed by the appellant covering towing services. 285 I. C. C. 75.

The appellant filed a complaint in the District Court of the United States for the Northern District of New York to set aside that order. A statutory three-judge court refused to set it aside, 107 F. Supp. 184, and this appeal followed.

We need not go into the differences between towage and freightage. It is admitted for the purposes of this case that the limitations placed by the order of March 7, 1944, upon the original certificate issued Hutton in 1942, had the effect of restricting his operations to freightage and denied him the right to engage in towage. The appellant cannot now raise the question of the power of the Commission to modify the original certificate of July 17, 1942, by the limitations contained in the order of March 7, 1944. Whether the Commission's action in reopening the 1942 proceedings and placing the limitations on the certificate theretofore issued was right or wrong, the jurisdiction of the Commission was not destroyed thereby. A direct attack in such circumstances was the remedy.

Hutton not only did not object. He accepted the modified certificate and operated under it, just as he had always operated. His operation was not cut down by the limitations placed upon the certificate. The appellant, as transferee of that modified certificate, stands in no better position than Hutton stood. Cf. *Gregg Cartage & Storage Co.* v. *United States*, 316 U. S. 74, 82–83. Indeed, in the 1947 transfer proceedings before the Commission when the appellant sought to acquire Hutton's amended certificate of March 7, 1944, the appellant objected that the protestant there could not raise the question of the Commission's power to modify the certificate, as this would be a collateral attack on the Commission's order. That is exactly what the appellant seeks to do here. It cannot in this collateral proceeding attack the validity of the Commission's order of March 7, 1944. *Securities & Exchange Comm'n* v. *Central-Illinois Sec. Corp.*, 338 U. S. 96, 143; *Stanley* v. *Supervisors*, 121 U. S. 535, 550; *Reconstruction Finance Corp.* v. *Lightsey*, 185 F. 2d 167; *City of Tulsa* v. *Midland Valley R. Co.*, 168 F. 2d 252, 254; *Brown Co.* v. *Atlantic Pipe Line*, 91 F. 2d 394, 398. The appellant must take the certificate as it stood at the

time it sought and received the Commission's approval for its transfer.

Furthermore, the appellant, having invoked the power of the Commission to approve the transfer of the amended certificate to it, is now estopped to deny the Commission's power to issue the certificate in its present form and as it existed prior to the time the appellant sought its transfer. *United Fuel Gas Co.* v. *Railroad Comm'n,* 278 U. S. 300, 307–308; *St. Louis Malleable Casting Co.* v. *Prendergast Construction Co.,* 260 U. S. 469. This is especially true in view of the appellant's contention at the 1947 transfer hearing that the protestant in that hearing could not raise the question there which the appellant seeks to raise here, as it would constitute a collateral attack on the order of the Commission. The appellant cannot blow hot and cold and take now a position contrary to that taken in the proceedings it invoked to obtain the Commission's approval. If the appellant then had taken the position it seeks now, the Commission might conceivably have refused its approval of the transfer. The appellant accepted the transfer with the limitations contained in the certificate. The appellant now will not be heard to say it is entitled to receive more than its transferor had or the certificate transferred gave.

The judgment of the District Court is

*Affirmed.*

Mr. Justice Black concurs in the result.

Mr. Justice Douglas dissents.