BURLINGTON–CHICAGO CARTAGE,
INC., Plaintiff,
v.
UNITED STATES of America,
Defendant,
and
Interstate Commerce Commission,
Intervening Defendant.

No. P–2240.

United States District Court
S. D. Illinois, N. D.

Nov. 27, 1959.

James E. Lesh, Lesow & Lesh, Indianapolis, Ind., for plaintiff.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., for defendant, United States.

Carroll T. Prince, Jr., Asst. Gen. Counsel, Washington, D. C., for intervening defendant, Interstate Commerce Commission.

Before CASTLE, Circuit Judge, and MERCER and POOS, District Judges.

MERCER, District Judge.

By its complaint against the United States of America, plaintiff seeks to review several orders of the Interstate Commerce Commission and prays that such orders be vacated and set aside. By order entered July 27, 1959, the Interstate Commerce Commission was joined as an intervening defendant.

Defendants, by their joint answer, averred, that the complaint fails to state a cause of action, basing that position principally upon the decision in Callanan Road Improvement Co. v. United States, 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206. Further answering, in the alternative, defendants admit essentially all facts stated in the complaint but deny that the Commission acted unlawfully or arbitrarily in entering the orders of which complaint is made.

Plaintiff is a common carrier of freight over certain certificated routes in the States of Illinois, Indiana, Iowa and Nebraska. On or about November 2, 1949, plaintiff and one C. H. Smith, doing business as Chicago-Nebraska Motor Express, filed a joint application with the Commission seeking authority for the purchase by plaintiff of certain operating rights previously granted to Smith for haulage of general commodities over regular routes from Chicago, Illinois, to Hastings, Nebraska, and "to and from" certain specified intermediate and off-route points. While the purchase-authorization proceeding was pending before the Commission, plaintiff, on or about March 30, 1950, began operating under the Smith rights as lessor thereof pursuant to a temporary authorization granted by the Commission. On August 14, 1950, the Commission denied the purchase authorization application. After a further hearing was had upon the application, the Commission reversed itself and issued its report and order dated June 23, 1952 authorizing plaintiff to make the purchase. In its report, the Commission interpreted the "Smith rights" grant as authorizing only westbound movements of freight for compensation. In this context, the Commission found that Smith, and plaintiff as lessee under temporary authorization, and all other lessees who had operated under the certificate had exceeded the authority granted to Smith by performing movements for compensation eastbound from intermediate and off-route points. It directed that such unauthorized service be discontinued.

Precisely when plaintiff purchased the Smith operating rights under authority of the June 23, 1952 order does not appear from the pleadings. Plaintiff did purchase those rights and it is a fair assumption that the purchase was effected between June 23, 1952 and August 11, 1952. On the latter date plaintiff petitioned for reconsideration of the June 23d decision, requesting that the rights, with respect to intermediate and off-route points, be interpreted to permit both west-bound and east-bound transportation for compensation. On January 5, 1953, the Commission denied the latter petition, without opinion. Thereafter, on

September 23, 1953, the Commission issued to plaintiff a consolidated certificate of public convenience and necessity which included both the purchased Smith rights and operating rights previously granted to plaintiff. The language of the consolidated certificate which delineates the operating rights acquired through the purchase from Smith, was revised to indicate with greater specificity than the original certificate to Smith had done that only west-bound transportation for compensation was permitted as to all points which plaintiff was thereby permitted to serve.

Thereafter, the cause lay dormant until April 11, 1958, when plaintiff filed with the Commission its Petition for Clarification and/or Interpretation and Declaratory Order requesting the Commission to interpret the consolidated certificate to permit both west-bound and east-bound traffic with respect to plaintiff's operation between the "Smith rights" intermediate and off-route points. An order was entered on July 29, 1958 denying plaintiff's petition on the ground that the certificate had been previously interpreted by the whole Commission and that no need or justification was shown for further interpretation or clarification thereof. Plaintiff then filed a petition on August 23, 1958 for reconsideration of its April 11th petition. That last-gasp effort before the Commission was denied by order entered December 10, 1958 as a repetitious petition for rehearing violative of Commission rules.

Plaintiff then filed its complaint in this Court on May 26, 1959, for review of the several orders and reports of the Commission construing its "Smith rights" grant as permitting only west-bound transportation for compensation. Plaintiff alleges that such interpretation of the Smith certificate, and the "Smith rights" portion of the plaintiff's consolidated certificate, is unlawful, arbitrary, capricious and not justified by the evidence before the Commission prior to its June 23, 1952 report and order.

At the outset, we are faced with defendants' first defense, namely, that the complaint fails to state a cause of action upon which relief can be granted. After due consideration we are of the opinion that the decision in Callanan Road Improvement Co. v. United States, 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206, is not in point, factually. The decision in Callanan rests upon the particular fact situation there presented. One Hutton had been granted a "grandfather clause" certificate of convenience and necessity as a common carrier by water between ports of call in designated areas. Thereafter, on its own motion, the Commission issued to Hutton an amended certificate restricting his operating rights to freightage service only and excluding contract towage service. Hutton accepted the amended certificate without protest and continued operating thereunder until his death. After Hutton's death, Callanan purchased his operating rights by Commission authorization granted in 1947. Several years thereafter Callanan filed a petition requesting an interpretation of its "Hutton rights" certificate permitting it to engage in towage service. The cause reached the Supreme Court in proceedings instituted by Callanan to review an order of the Commission interpreting the "Hutton rights" certificate as permitting freightage service only. Upon this factual background, the Supreme Court held that the proceeding instituted by Callanan could not be maintained for the reason that it constituted a collateral attack upon the Commission order under which Hutton's certificate had been amended prior to the time of Callanan's purchase of the Hutton operating rights. The Court held further that Callanan having invoked the power of the Commission for approval of the transfer of the Hutton certificate, as amended, was estopped to deny the authority of the Commission to issue that certificate.

In the instant cause there is no collateral attack and no similar factual basis for an estoppel. Plaintiff sought approval for the purchase of the certificate as originally granted to Smith. Amendment of the language of the cer-

tificate intervened in the case after the interpretive report issued by the Commission on June 23, 1952. Subsequent proceedings, including this cause, have been directed to review of that report and orders issued thereon. This is therefore a direct attack upon the Commission orders and not subject to the infirmities found to exist in the Callanan case.

■ In conjunction with their attack upon the complaint, defendants assert that plaintiff seeks to vacate a part only of the Commission's interpretive report and order. Thus, defendants state that plaintiff seeks to retain the fruits of the order in the form of the authorization for purchase of the Smith certificate, while, in the same breath, attacking that part of the report and order which interprets that certificate to permit compensated transportation west-bound only. In conjunction with this argument, defendants also assert laches as inimical to the interests of other carriers.

Neither assertion has either logical appeal or supporting precedent requiring its adoption. Federal Power Commission v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15, upon which defendants rely decided only that the courts, upon reversal of an administrative order, may not usurp the administrative function and rewrite the order— that the cause must be remanded to the administrative body for further proceedings consistent with the Court's decision. Since the result of vacation of the orders in issue would be a remandment to the Commission, the interest of the Commission in maintaining its control over interstate commercial motor carriage and the interests of competing carriers would be protected should the orders be vacated.

■ Defendants' first defense is overruled.

The merits of the cause consist solely of the question of interpretation of the single phrase "to and from", as that phrase is used in the Smith certificate. Smith was granted a certificate of con-venience and necessity for the transporting of freight by motor vehicle, as follows:

"*General commodities*, except those of unusual value and, except dangerous and explosives, livestock, commodities in bulk, commodities requiring special equipment other than refrigeration, and those injurious or contaminating to other lading, over regular routes,

"From Chicago, Ill., to Hastings,. Nebr., as follows:

"From Chicago over U.S. Highway 34 to Lamoille, Ill., thence over Illinois Highway 92 via Silvis, Ill., to Moline, Ill., thence over U.S. Highway 6 to Marengo, Iowa, thence over Iowa Highway 212 via Belle Plaine,. Iowa, to junction U.S. Highway 30, thence over U.S. Highway to Missouri Valley, Iowa, thence over Alternate U.S. Highway 30 to Council. Bluffs, Iowa, and thence over U.S. Highway 6 to Hastings;·

"From Chicago over U.S. Highway 66 to Chenoa, Ill., thence over U.S. Highway 24 to Peoria, Ill., thence over Illinois Highway 116 to junction U.S. Highway 34, thence over U.S. Highway 34 to Glenwood, Iowa, thence over U.S. Highway 275 to Council Bluffs, Iowa, thence over U.S. Highway 6 to Hastings (also from Glenwood over U.S. Highway 34 to Lincoln, Nebr., thence over U. S. Highway 6 to Hastings); and

"*Return, with no transportation for compensation except as otherwise authorized, over these routes to Chicago.*

"Service is authorized to and from the intermediate points of Peoria, Rock Island and Moline, Ill., Davenport and Council Bluffs, Iowa and Omaha, Lincoln and Fairmont, Nebraska, and the off-route points of Canton, Ill., Clinton Iowa, and Beatrice, Nebr." (Emphasis supplied.)

In its report authorizing plaintiff's. purchase of the Smith operating rights. the Commission interpreted the empha--

sized paragraph of the certificate as follows:

> "Vendee, under the temporary authority, (for operation under the Smith rights), has performed both west-bound and east-bound service, particularly between Omaha and Chicago, because it construes the certificate as authorizing two-way service between all points permitted to be served, except that a return movement may not be performed from Hastings. This seems to have been the interpretation placed upon the certificate by all of the carriers operating under these rights. We are unable to agree with this interpretation of the certificate. In our opinion, the certificate is without ambiguity in authorizing one-way service from Chicago westward to Hastings, with service to and from the specified intermediate and off-route points on west-bound traffic only." 58 M.C.C. at 477.

Further spelling out its interpretation of "to and from" the Commission added that the certificate authorized origination of a shipment at one point for a west-bound intermediate destination, and the origination at such destination of shipments to be moved westward along the route. See to same effect, Washington Express, Inc.—Interpretation of Certificate, 63 M.C.C. 537, 544.

Plaintiff concedes that it could not perform east-bound movements for compensation from Hastings under the original Smith certificate, but it argues that the west-bound only restriction cannot be construed to prohibit east-bound movements for compensation from the intermediate points and off-route points permitted to be served. As we understand it, plaintiff's argument is as follows: The text of the certificate after spelling out the route permitted to be used from Chicago to Hastings, then specifies that no return trip "transportation for compensation" may be performed "except as otherwise authorized"; permitted service "to and from" specified intermediate and off-route points is de-

lineated in the portion of the certificate which follows the proscription of "return, with no service for compensation", which must be read as an exception to that proscription; that "to and from", as to all intermediate and off-route points, must, therefore, be interpreted to authorize transportation in both directions along the prescribed routes; and that the Commission acted arbitrarily and unlawfully in concluding that the restriction against the "east-bound" movements for compensation applied to all points along the route.

It appears that the Commission has recognized that plaintiff's argument wears the mantle of merit to the extent that the appeal of the argument rests upon the contention that the Smith certificate was ambiguous. Thus, despite the Commission's opinion that that certificate was "without ambiguity", when the same rights were spelled out in plaintiff's consolidated certificate the composition of the text was revised to show clearly that the restrictive clause referred to all points along the route, to wit:

> "*General commodities*, except those of unusual value, Class A and B explosives, livestock, household goods as defined by the Commission, commodities in bulk, commodities requiring special equipment other than refrigeration, and those injurious or contaminating to other lading,

> "From Chicago, Ill., to Hastings, Nebr., with service to and from the intermediate points of Peoria, Rock Island, and Moline, Ill., Davenport and Council Bluffs, Iowa, and Omaha, Lincoln and Fairmont, Nebr., and the off-route points of Canton, Ill., Clinton, Iowa, and Beatrice, Nebr., as follows:

> "From Chicago over U.S. Highway 34 to Lamoille, Ill., thence over Illinois Highway 92 via Silvis, Ill., to Moline, Ill., thence over U.S. Highway 6 to Marengo, Iowa, thence over Iowa Highway 212 via Belle Plaine, Iowa, to junction U.S. Highway 30, thence over U.S. Highway 30 to Missouri Valley, Iowa, thence

over Alternate U.S. Highway 30 to Council Bluffs, Iowa, and thence over U.S. Highway 6 to Hastings.

"From Chicago over U.S. Highway 66 to junction Alternate Highway 66, thence over Alternate Highway 66 to junction U.S. Highway 66, thence over U.S. Highway 66 to Chenoa, Ill., thence over U.S. Highway 24 to Peoria, Ill., thence over Illinois Highway 116 to junction U.S. Highway 34, thence over U.S. Highway 34 to Glenwood, Iowa, thence over U.S. Highway 275 to Council Bluffs, Iowa, thence over U.S. Highway 6 to Hastings (also from Glenwood over U.S. Highway 34 to Lincoln, Nebr., thence over U.S. Highway 6 to Hastings).

"Return, with no transportation for compensation except as otherwise authorized, over these routes to Chicago."

■ If we are to vacate the Commission's report and orders, however, that decision must be based upon something more substantial than preference in semantics and composition. Though we may believe that a more aptly expressive term than "to and from" might have been employed to signify a restriction of compensated transportation to one-way movements only, we cannot interfere with the Commission's interpretation unless we can say that it is without "rational basis", (Mississippi Valley Barge Lines Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260) and clearly erroneous. One of the more recent statements by the Supreme Court of that principle appears in Andrew G. Nelson Inc. v. United States, 355 U.S. 554, 558–559, 78 S.Ct. 496, 499, 2 L.Ed.2d 484, in pertinent part as follows:

"In ascertaining (the meaning of words used in operating authority issued by the Commission), we are not given *carte blanche*; just as '[t]he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission,' Noble v. United States, 1943, 319 U.S. 88, 93, 63 S.Ct. 950, 952, 87 L.Ed. 1277, subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous. Dart Transit Co. v. Interstate Commerce Comm'n, D.C., 110 F.Supp. 876, affirmed 1953, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394".

In Malone Freight Lines, Inc. v. United States, D.C., 107 F.Supp. 946, 949, affirmed 344 U.S. 925, 73 S.Ct. 497, 97 L. Ed. 712, the Court aptly stated that "the scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its creation". We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. See to same effect Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876, 880, affirmed 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394; Adirondack Transit Lines v. United States, D.C., 59 F.Supp. 503, 504, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393.

We cannot say that the Commission's interpretation of the rights granted by the Smith certificate is either arbitrary, or capricious, or clearly erroneous. Considered in the light most favorable to plaintiff's cause, the very strongest case to be put is that the text of the Smith certificate is ambiguous. "So regarding it, its interpretation is for the Commission" and this Court cannot overrule and set aside the Commission's interpretation "unless it is clearly erroneous or arbitrary, and the interpretation here is not." Adirondack Transit Lines, Inc. v. United States, D.C., 59 F.Supp. 503, 504, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393.

It is significant, also in support of the challenged orders that plaintiff purchased the Smith rights with notice of the restrictive interpretation of which it now complains. The same report which authorized plaintiff to consummate the pur-

chase spelled out the one-way compensated traffic limitation. We think plaintiff cannot now plead with any strength of conviction that it received less than it bargained for at that time. See Callanan Road Improvement Co. v. United States, 345 U.S. 507, 513, 73 S.Ct. 803, 97 L. Ed. 1206.

For the foregoing reasons the complaint is dismissed.