A. DUDA & SONS COOPERATIVE ASSOCIATION, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 73-1246.

United States Court of Appeals, Fifth Circuit.

June 6, 1974.

**194**

Scott P. Crampton, Asst. Atty. Gen., Helen E. Marmoll, Meyer Rothwacks Attys., Tax Div., Dept. of Justice, Lee H. Henkel, Jr., Acting Chief Counsel, I. R. S., Washington, D. C., John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., Leonard J. Henzke, Jr., Carleton D. Powell, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

George I. Meisel, Cleveland, Ohio, William Y. Akerman, Orlando, Fla., Robert H. Kennedy, Eric M. Oakley, Cleveland, Ohio, for plaintiff-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Plaintiff-appellee operated as a tax-exempt cooperative organization under 26 U.S.C. § 521 [1] until 1965, when the Internal Revenue Service revoked its tax-exempt status. Appellee did not contest this action. Soon afterwards, the Service assessed a large deficiency against appellee, which paid the deficiency and now sues under 26 U.S.C. § 7422 for a refund. The district court, finding that the Service illegally revoked the exemption in 1965, entered judgment for the taxpayer. We reverse and remand for further proceedings in the district court.

### I.

A. Duda & Sons Cooperative Association, plaintiff-appellee, was organized in 1946 by vegetable and citrus growers of the Slavia region of Florida. In 1948, the Internal Revenue Service ruled that the Association was an exempt cooperative as defined by § 101(12) of the Internal Revenue Code of 1939, the predecessor of § 521 of the Internal Revenue Code of 1954, 26 U.S.C. § 521.

The Association operated as an exempt organization from 1948 through 1965, at which time the Acting Director of the IRS office in Jacksonville sent a determination letter revoking the Association's tax-exempt status for failure to comply with four technical requirements of the statutory exemption.[2] The gov-

---

1. 26 U.S.C. § 521 provides in part:
   *Exemption of farmers' cooperatives from tax*
   (a) *Exemption from tax.*—A farmers' cooperative organization described in subsection (b)(1) shall be exempt from taxation under this subtitle except as otherwise provided in part I of subchapter T (sec. 1381 and following). Notwithstanding part I of subchapter T (sec. 1381 and following), such an organization shall be considered an organization exempt from income taxes for purposes of any law which refers to organizations exempt from income taxes.
   \* \* \* \* \*

2. The Acting Director's letter stated:
   The examination of your books and records by Agent Frank Houghton of our Orlando office revealed (1) that since September 1, 1956, a substantial amount of your cap-

ernment argues that the investigation which led to this revocation also produced evidence which indicated that the Association was not "operating on a cooperative basis," as required by § 521, but the revocation letter sent to the Association cited the failure to comply with the four enumerated requirements of the act as the only reasons for the revocation. The Association protested the inaccuracy of the factual conclusions relied on to support the revocation, but did not appeal the revocation, as it had the right to do under § 601.201(n)(6) of the Service's Statement of Procedural Rules, 26 C.F.R. § 601.201(n)(6).

The Acting Director's letter, dated December 29, 1965, revoked the 1948 ruling "as of September 1, 1956" and stated that the Association would be "required to file Federal Income Tax returns for fiscal year ending August 31, 1962 and subsequent years."

The revocation of the Association's tax-exempt status had no immediate effect on its tax liabilities, since even non-exempt cooperatives are entitled to large deductions unavailable to other types of corporations. Thus, when the Association filed the usual corporate income tax forms for 1962 and subsequent years, it claimed deductions under Subchapter T of Chapter 1 of the Code, 26 U.S.C. § 1381 et seq. on the ground that it was operating on a cooperative basis, and continued to pay no taxes.

On September 2, 1966, the IRS sent a 30-day letter to the Association asserting proposed deficiencies for the years 1962 through 1965. The IRS disallowed the deductions taken under Subchapter T and summarized its reasons for doing so as follows:

> It is held that Association is not "operating on a cooperative basis" and

its retained amounts are not "obligations" within the meaning of Section 1381(a)(2) and 1388(a)(2) of the I. R. Code and previous Revenue Rulings. Thus, Association is fully taxable on its net income. The patronage dividend deduction of 1382(b) is not available.

On November 28, 1966, the Association filed a protest of the report which led to the 30-day letter. On August 22, 1968, a notice of deficiency (90-day letter) was sent to the Association. The notice disallowed the Association's deductions on the ground that during the years in issue, the taxpayer was not "operating on a cooperative basis." In 1969, taxpayer paid the additional assessed taxes and filed claims for refund with the IRS. After the requisite six months had passed, 26 U.S.C. § 6532(a), taxpayer filed this suit for refund of the taxes

During a pre-trial conference on May 11, 1971, the government's trial attorney conceded that the four technical reasons cited in the Service's 1965 revocation letter were factually erroneous. Further discovery was conducted, but on September 13, 1972, the district court ruled that:

> The 1965 revocation of the exempt status of plaintiff A. Duda & Sons Cooperative Association was invalid and the defendant cannot challenge Association's status as "operating on a cooperative basis" in this action. The Court finds, therefore, that Association is entitled to a full refund of taxes and interest paid for the suit years.

Then, on October 18, 1972, although no formal summary judgment motions had been filed, and no documents or testimony had been admitted into evidence, the

---

ital stock outstanding is held by producers who do not market their products or purchase equipment through the association; (2) your purchase of vegetables from non-members, to fill customers' requirements for vegetables not normally handled by the association, are not on a cooperative basis; (3) you failed to credit the

profit from the hardware store activities to non-member patrons; (4) the amounts retained by the cooperation are unreasonable, and the use for which this money is used, i. e. unsecured interest-free advances or loans to one member does not appear to justify the maintenance of such a reserve.

court entered judgment for the appellee. The government filed a notice of appeal on December 14, 1972.

On July 10, 1973, upon a motion of the appellee to supplement the record on appeal, the district court set forth in an order that at the May 11, 1971, conference, counsel for the government admitted that the revocation of the exemption

.   .   .   was based solely on the asserted non-compliance by plaintiff with the technical requirements of Section 521, and that plaintiff in fact met the said technical requirements of Section 521. Defendant's counsel also admitted that the attempted revocation had not been based, in whole or in part, on the contention that plaintiff was not "operating on a cooperative basis" during fiscal years 1962 through 1965.

The court then stated in the order that, "It was because of these admissions that the Court determined [in its September 13 order] that "the 1965 revocation of the exampt [sic] status of plaintiff A. Duda & Sons Cooperative Association was invalid.   .   .   ."

## II.

The first, and, because of our disposition of it, the only question which arises in this case is whether the district court properly considered the validity of the 1965 revocation in this suit for a refund. We hold that it did not. We do not hold that the district court's holding was incorrect, but rather that it should not have been made in the first place.

■ After hearing counsel for the government concede that the factual bases for the 1965 revocation were erroneous, the court held that the revocation was invalid. We note preliminarily that (1) the concession might have been made simply for the purpose of this suit, and for that reason should not be applied to the now-closed administrative record in the revocation proceedings, and (2) the concession might have been made simply for the purposes of narrowing the issues to be tried, and should not

be taken as an actual admission that the Service was incorrect in 1965. However, it is not necessary for us to decide either of these questions, for it is our holding that in the circumstances of this case, the validity *vel non* of the 1965 revocation is closed to further judicial review in the context of a refund suit under 26 U.S.C. § 7422. Cf., Callanan Road Improvement Co. v. United States, 345 U.S. 507, 512, 73 S.Ct. 803, 97 L.Ed. 1206 (1953).

In the context of this case, it matters little whether one speaks of res judicata or collateral estoppel. In this case, the parties are the same as those in the administrative proceeding in question—the government and the association—and the question being relitigated is the same—whether the Service's 1965 revocation of the Association's tax-exempt status was proper. Thus, the classic requirements of the doctrine of res judicata are fulfilled. But one may also speak in terms of the Association being estopped from launching a collateral attack on the validity of the 1965 revocation. In either case, the principle at stake is the same—having had a full opportunity to make its case against the revocation of its exemption in 1965, the Association ought not to be allowed to relitigate the merits of that dispute in this suit. To do so would violate both the government's interest in finality of dispute settlements, and its interest in requiring parties to follow established administrative routes of appeal.

Although it has traditionally been thought that decisions of administrative agencies are not entitled to any res judicata effect at all in courts of law, that doctrine has come under increasingly severe attack in recent years. See 2 Davis, Administrative Law §§ 18.01 et seq. As Professor Davis states, the question is no longer whether an administrative determination should be given res judicata effect, but rather how much effect it should be given. Davis, *supra*, § 18.- 02. The Supreme Court has held that

When an administrative agency is acting in a judicial capacity and resolves

disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. [citations omitted] United States v. Utah Construction and Mining Company, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Likewise, this court has recognized that

The policy considerations which underlie res judicata—finality to litigation, prevention of needless litigation, avoidance of unnecessary burdens of time and expense—are as relevant to the administrative process as to the judicial. Painters District Council No. 38, Brotherhood of Painters, Decorators and Paperhangers of America v. Edgewood Contracting Company, 416 F.2d 1081 (1969).

■ To this list of factors to be considered, we add yet another: when the failure to give res judicata effect to a finding of an administrative agency would encourage litigants to bypass prescribed appeal procedures of an agency, that factor should weigh strongly in the decision.

Under the *Utah Construction* case, the first question was whether the action is "judicial." In answering that question, Professor Wright notes that:

The best approach is to avoid the labels that have been attached to various functions for other purposes and to determine what is judicial or nonjudicial for purposes of res judicata by emphasizing factors which relate to res judicata. Wright, *supra*, § 18.08.

■ In this case, the revocation of appellee's exemption must be considered a judicial act for the purpose of res judicata. The revocation was directed specifically at the appellee; it was not a general rule applicable to all organizations of a given class. Although, as appellee correctly argues, the revocation had no immediate effect on its tax liability, the revocation did have an immediate effect upon the status of the appel-

lee. In addition, appellee was well informed of the progress of the Service's reconsideration of its tax-exempt status. Finally, after appellee received the December 29 letter from the Acting Director, it could have availed itself of the entire array of IRS review procedures. It could have filed a formal protest of the decision "by submitting a statement of the facts, law, and arguments in support of its continued exemption." 26 C.F.R. § 601.201(n)(11)(i) [in effect in 1965]. It could have had a conference in the district office. *Id.* It could have had the matter referred to the National Office. 26 C.F.R. § 601.201(n)(11)(iii).

But appellee chose to forego the opportunity to take advantage of any of those procedures. Instead, it sat on its rights and accepted the decision of the Service. In such a situation, the Service had the authority under its regulations to make the decision to revoke the exemption. It did so.

Appellee at no time has alleged that the procedure used by the Service was unfair. Neither does it contend that it did not have full notice of the effect of the revocation. In fact, in its brief and at oral argument, appellee admits that it knew fully what was happening in the revocation proceeding, and that it made a conscious decision not to appeal. It asserts that the reason for this decision was the expense involved in the appeal and the lack of any immediate impact on the taxes owed by it. But there is no allegation that the avenues of appeal were not open to it as much as to any other taxpayer, or that the Service took any action to deprive it of its right to appeal. The record, in fact, reveals the contrary.

Taxpayer does assert, however, that the reason that the four technical reasons, and not its alleged "failure to operate on a cooperative basis" were alleged in the revocation, was that the agent in charge of the investigation wanted to avoid bringing the question of "operating on a cooperative basis" before the National Office of the IRS, that office having ruled in 1948 that taxpay-

198

er was operating on a cooperative basis. Thus, taxpayer argues, the failure to assert "non-cooperativeness" as a ground for license revocation and the assertion of it as a defense in this refund suit constitute an attempt to circumvent the normal appeal channels of the Service.

Not only is this argument speculative and hypothetical (although ingenious), acceptance of it would create the same harm that it purportedly seeks to avoid. For if the decision of the Service in the license revocation proceeding could be collaterally attacked in a suit for tax refund, the normal appellate processes of the Service could be circumvented. An aggrieved taxpayer could intentionally bypass the avenues of appeal provided by the Service and attack the ultimate assessment of taxes (which is all that really matters) in a suit for refund. This we cannot allow. Congress and the Internal Revenue Service have established very complete and comprehensive methods of review for cases such as this. In such a case, where no procedural unfairness, lack of notice or other extenuating circumstance is even alleged, much less demonstrated, it is not open to the taxpayer to launch a collateral attack on the exemption revocation in a tax refund suit.

■ We do not now decide that all administrative determinations are for all purposes res judicata in later court proceedings. We merely hold that when the Internal Revenue Service follows proper procedures in revoking the tax exemption of a taxpayer, and that taxpayer acquiesces in the decision by failing to proceed with any kind of administrative remedy, even though it had full notice of the proceedings and full opportunity to appeal the revocation of the exemption, that taxpayer is estopped to assert the invalidity of that revocation in a subsequent suit for refund of taxes paid.

It should also be noted that there is no evidence before this court tending to show that the procedure used by the Service was in any way oppressive or undertaken in bad faith. Had the taxpayer shown, for example, that it was being harrassed by repeated unsuccessful attempts by the Service to revoke its exemption, the situation might be different. There has been no such showing here. The view we take of this case is neither mechanical nor automatic. It is pragmatic, based on the circumstances of this case, which demonstrate an unsatisfactorily explained refusal to follow standard administrative appeal procedures, followed by an attempted collateral attack on the decision not appealed from. In such a situation, the mere proof that the facts relied on in the earlier proceeding were in some ultimate sense "wrong" is not enough to disturb the finality of the administrative decision.

This decision does not dispose of the matter, of course. It will now be necessary for the district court to determine the merits of the taxpayer's suit for a refund. It appears from the record that the major question in these proceedings will be whether during the years in question, the taxpayer was "operating on a cooperative basis." This the court will have to determine for itself. It should be re-emphasized, however, that the district court is not to re-determine the validity of the exemption revocation. That proceeding has been concluded, and the exemption is gone. Absent some showing of fraud, deception, or concealment, taxpayer cannot regain the exemption it lost in the 1965 proceeding. It may, of course, apply for another exemption from the Service, which application would, we assume, be processed through the normal channels. But the exemption revoked in 1965 is now a bit of history. It cannot be resuscitated on the record made in the court below.

Reversed and remanded for further proceedings.