Russell Lloyd, Justice
This is an appeal of the trial court's judgment on a petition for judicial review of an order of Harris County Appraisal District's ("HCAD") Appraisal Review Board denying Harris County's challenge to the granting of a property tax exemption on certain inventory owned by PRSI Trading, LLC ("PRSI").[1] Harris County contends that the trial court erred in denying its motion for summary judgment and granting PRSI's and HCAD's cross-motions for summary judgment because PRSI's inventory is not exempt from ad valorem taxation under applicable federal law. We reverse and render.
Background
A. Foreign Trade Zones
Foreign trade zones ("FTZs") are areas under the supervision of United States Customs and Border Protection ("CBP") that are considered outside the customs territory of the United States for purposes of payment of customs duties. See 75th Annual Report of Foreign Trade Zones Board to the Congress of the United States. Authority for establishing these areas is granted to the Foreign Trade Zones Board ("FTZ Board") pursuant to the Foreign Trade Zones Act of 1934 ("the Act") and the FTZ Board's regulations. See 19 U.S.C. § 81a -u (2012); 15 C.F.R. § 400.3 (2017). The FTZ Board also has the authority to approve "subzones," which are special purpose zones established as part of a zone project for a limited purpose that cannot be accommodated within an existing zone, and that enjoy the same status as goods held in an FTZ. See 15 C.F.R. § 400.3(a)(2) (2017), 19 C.F.R. § 146.1(b) (2016).
Putting a zone into operation is a two-stage process. See FOREIGN TRADE ZONES MANUAL , at ¶ 4.1 (2011). First, the FTZ Board must approve a grant to establish, operate, and maintain the zone. Id. Second, CBP must approve activation to allow merchandise to be admitted to the zone in zone status. Id. In order for the zone to be activated, the operator of the zone must obtain approval of the grantee, in this case, the Port of Houston and the port director. 19 C.F.R. § 146.6(e) (2016).
Under a 1983 amendment to the Act, goods held in an FTZ for export out of the United States are exempt from state and local ad valorem taxation. See 19 U.S.C. § 81o(e) (2012). This exemption is commonly referred to as an "FTZ exemption."
*80 Under Texas Tax Code section 11.12, "[p]roperty exempt from ad valorem taxation by federal law is exempt from taxation." TEX. TAX CODE ANN. § 11.12 (West 2015).
B. Factual and Procedural History
In 1995, the FTZ Board created Subzone 84-N in favor of its original operator, Crown Central Petroleum Corporation ("Crown"). Subzone 84-N covers the refinery located at 111 Red Bluff Road and 1200 Red Bluff Road, in Pasadena, Texas. Crown entered into an agreement with Harris County, insuring that the county would not oppose the subzone.
In 2004, the refinery was sold to Pasadena Refining System, Inc., a Delaware corporation ("PRSI(DE)"). At the time it purchased the refinery, PRSI(DE) was a wholly owned subsidiary of Astra Refining System, Inc. which was a wholly owned subsidiary of Astra Holding USA. Astra Holding USA, Inc., in turn, was a wholly owned subsidiary of Astra Oil Trading NV.
On January 21, 2005, PRSI(DE) entered into an agreement with the Port of Houston, the grantee of Subzone 84-N, authorizing PRSI(DE) to operate Subzone 84-N for the manufacturing, blending, and storage of petrochemicals and other related products at the refinery. On February 4, 2005, PRSI(DE) requested that CBP approve it as a new operator of Subzone 84-N, subject to the concurrence of the Port of Houston. The Port of Houston concurred with PRSI(DE)'s request and, on February 20, 2005, CBP approved PRSI(DE) as the new operator of Subzone 84-N. Harris County did not know of nor approve of this new operator designation.
In August 2006, PRSI(DE) was merged into its parent, Astra Refining System, Inc. which was simultaneously merged into its parent, Astra Holding USA, Inc. Astra Holding USA, Inc. subsequently changed its name to Pasadena Refining System, Inc., a Connecticut corporation ("PRSI(CT)").
In late August 2006, PRSI(CT) submitted an application to CBP asking that it approve PRSI(CT) as a new operator of the FTZ. In a letter dated February 15, 2008, CBP advised PRSI(CT) that it needed to obtain a letter of concurrence from the Port of Houston for approval to be granted. CBP did not approve PRSI(CT)'s application.
On April 7, 2008, PRSI(CT) filed a statement with CBP changing its position and asserting that it was not a new operator of Subzone 84-N and that it did not require an activation pursuant to 19 C.F.R. § 146.6.[2] On April 29, 2008, the Port of Houston advised CBP that if it required a letter of concurrence from the Port of Houston, then the Port of Houston would first need a "letter of non-objection" from Harris County, and it had not yet received such a letter.[3] Despite this uncertainty over the zone, PRSI requested, and CBP granted, PRSI month-to-month extensions of time to operate Subzone 84-N between April 18, 2008 and March 27, 2013.
*81 However, on September 21, 2009, CBP issued a letter ruling in which it held that
Pasadena Refining DE, the operator of Subzone 84-N, ceased to exist on August 29, 2006, and Pasadena Refining CT is a new entity for purposes of determining whether it is a new zone operator. Therefore, in Pasadena Refining CT's application for approval of what must be an activation, Pasadena Refining CT must provide a letter of concurrence from the [Port of] Houston Authority, the zone grantee, before CBP will approve the activation.
On May 5, 2010, PRSI(CT) requested that CBP reconsider its determination. As it had done in its original request for approval, PRSI(CT) argued in its request for reconsideration that, as a result of the merger, it had succeeded, as a matter of state law, to the operator status of PRSI(DE) and could not be a new operator.
On April 12, 2013, CBP issued a second letter ruling, reaffirming its holding:
The CBP Regulations and the [Foreign Trade Zone Manual] require that new FTZ operators be approved prior to operating a zone.... [S]ince Pasadena DE ceased to exist, CBP's approval to operate the FTZ also ceased. Pasadena CT[,] therefore, must be a new operator. This new operator must apply for approval to operate the FTZ.
On May 6, 2013, the Port of Houston notified CBP that it continued to decline to approve of PRSI(CT) as a new subzone operator, and it requested deactivation of Subzone 84-N. On August 23, 2013, CBP formally deactivated Subzone 84-N.
In its renditions to HCAD, PRSI claimed exemption from ad valorem taxation of the inventory within Subzone 84-N, including taxes assessed by Harris County. HCAD has continued to grant the FTZ exemptions to PRSI each year since 2006.
On May 30, 2013, Harris County filed a petition with the Harris County Appraisal Review Board ("ARB") challenging HCAD's grant of FTZ exemptions to PRSI and seeking back-appraisal for HCAD accounts numbered 1041489, 1044919, 2010581, and 2010582, for tax years 2006 to 2013. On September 16, 2013, the ARB denied Harris County's challenge.
On October 11, 2013, Harris County filed its original petition for review seeking judicial review of the ARB's order pursuant to Tax Code section 42.031. PRSI and HCAD answered on November 8 and 15, 2013, respectively. The case was removed to federal court on November 20, 2013, and then remanded on June 12, 2015. The parties filed cross-motions for summary judgment.
On April 20, 2016, the trial court granted PRSI's and HCAD's motions for summary judgment and denied Harris County's motion for summary judgment. Harris County timely filed its notice of appeal.
Discussion
On appeal, Harris County contends that the trial court erred in denying its motion for summary judgment and granting PRSI's and HCAD's cross-motions for summary judgment. Harris County argues that there has been no authorized operator of Subzone 84-N since 2006 and that, without an authorized operator, no goods could have been properly admitted into the subzone pursuant to applicable federal regulations. Thus, it argues, PRSI is not entitled to the FTZ exemption.
PRSI and HCAD contend that the trial court properly granted summary judgment in their favor and denied Harris County's motion. PRSI argues that the FTZ exemption *82 was available to its inventory during the relevant tax years based on the continued active status of 84-N, CBP's approval of PRSI(CT) to operate 84-N on a month-to-month basis, and CBP's allowing the inventory to be admitted to Subzone 84-N. HCAD asserts that it correctly applied Texas law in exempting from ad valorem taxation PRSI's property based on its exemption from federal taxation.
A. Standard of Review
Summary judgment is a question of law. Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 216 (Tex. 2003). Thus, we review a trial court's grant of summary judgment de novo. Nall v. Plunkett , 404 S.W.3d 552, 555 (Tex. 2013). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is thus entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When, as here, both parties move for summary judgment and one motion is granted and one denied, we must determine all questions presented and render the judgment that the trial court should have rendered. See Argonaut Ins. Co. v. Baker , 87 S.W.3d 526, 529 (Tex. 2002).
Exemptions from taxation are not favored by the law. "Statutory exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals." Bullock v. Nat'l Bancshares Corp. , 584 S.W.2d 268, 271-72 (Tex. 1979). "An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of [the] taxing authority and against the claimant." Id. at 272. "Simply stated, the burden of proof is on the claimant to clearly show that it comes within the statutory exemption." Id.
B. FTZ Exemption
The FTZ exemption provides that "[t]angible personal property" which is "held in a zone" for certain enumerated purposes "shall be exempt from State and local ad valorem taxation." 19 U.S.C. § 81o(e). The FTZ Board, which has rulemaking authority governing the use and operation of FTZs, has made clear that property must be "admitted" into a zone to be entitled to ad valorem tax exemption: "Foreign merchandise (tangible personal property) admitted to a zone and domestic merchandise held in a zone for exportation are exempt from certain state and local ad valorem taxes.... Articles admitted into zones for purposes not specified in the Act shall be subject to the tariff laws and regular entry procedures, including the payment of applicable duties, taxes, and fees." 15 C.F.R. § 400.1(c) (2017).
"Admit" means to bring merchandise into a zone with zone status. 19 C.F.R. § 146.1(b). Merchandise may only be admitted into a zone or subzone that has been "activated." Id. "Activation" means approval by the grantee[4] and port director[5] for operations[6] and for the admission and handling of merchandize in zone status. See itation index="16" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.1">id. at (a). "Upon the port director's approval of the application and acceptance of the executed bond, the zone *83 or zone site will be considered activated; and merchandise may be admitted into the zone." Id. § 146.6(e). Only after the approval of activation will Users gain the benefits conferred under the FTZ Act. See FOREIGN TRADE ZONES MANUAL , at ¶ 4.1.
In the event that a new entity wishes to take over as operator of an existing subzone, it must apply for and obtain the concurrence of the zone grantee and approval of a new activation. "A grantee of an activated zone site shall make written application to the port director for approval of a new operator." 19 C.F.R. § 146.7(e) (2016). Section 146.1(b) provides that "[i]f the operator is different, [the action] is an activation." 19 C.F.R. § 146.1(b). If an operator is a corporation and a "change results in a new corporate entity, a new application for activation shall be made under the procedures in 19 C.F.R. § 146.6 and section 4.12 FTZM." FOREIGN TRADE ZONES MANUAL , at ¶ 4.13(a).
C. Was Subzone 84-N Activated During the Tax Years in Question?
Harris County contends that PRSI(CT) never complied with the federal regulations governing FTZs and therefore never obtained the authority to operate Subzone 84-N because it did not obtain approval as a new operator, which was necessary to activate the subzone. It argues that, without "activation," none of PRSI(CT)'s inventory in question could have properly been admitted and subject to the FTZ exemption.
PRSI(CT) contends that Harris County conflates the process for approving a new operator with the process for activating an FTZ. It argues that although it is true that an operator must be approved before activation occurs, a change in operator does not result in a loss of activation. PRSI(CT) further asserts that the FTZ exemption was available to its inventory during the tax years in question based on the continued active status of 84-N, and CBP's grant to PRSI of month-to-month extensions of time to operate Subzone 84-N between April 18, 2008 to March 27, 2013.
However, the resolution of this issue is governed by federal regulations and the rulings of the relevant federal authority. In its September 21, 2009 letter, CBP stated:
A foreign trade zone or subzone ... has an activated status, or has had its "activation approved, if the zone grantee and the CBP port director approve the operation of the zone.... If the operator of a zone is about to be changed, then there must be an application for approval of activation of the zone.... When a zone is operated by a corporation, and a change in the operator corporation "results in a new corporate entity, a new application for activation shall be made" pursuant to C.F.R. § 146.6.
....
Pasadena Refining CT was a new legal entity, which differed from the operator at the time of the 2005 activation of Subzone 84-N. Either the zone operator or the grantee should have applied for activation prior to the termination of Pasadena Refining DE.
....
Pasadena Refining CT is a new entity for purposes of determining whether it is a new zone operator. Therefore, in Pasadena Refining CT's application for approval of what must be activation, Pasadena Refining CT must provide a letter of concurrence from the [Port of] Houston Authority, the zone grantee, before CBP will approve the activation.
In its April 12, 2013 letter ruling, CBP reiterated its position and addressed PRSI(CT)'s position that PRSI(DE)'s right to operate the FTZ vested in PRSI(CT), the surviving corporation:
*84 Operation of an FTZ is a privilege not a right. Moreover, CBP does not permit the sale or transfer of the FTZ operator status between entities. The CBP Regulations and the FTZM require that new FTZ operators be approved prior to operating a zone .... As explained above, since Pasadena DE ceased to exist, CBP's approval to operate the FTZ also ceased. Pasadena CT therefore, must be a new operator. This new operator must apply for approval to operate the FTZ. (Emphasis added).
In light of CBP's holdings in its letter rulings, we find PRSI's interpretation of the applicable regulations untenable. PRSI(CT) was aware that CBP-the federal agency charged with administration of laws and regulations concerning the operation of FTZs and subzones-held that PRSI(CT) was a new operator and, as such, was required to submit a new application for activation pursuant to 19 C.F.R. § 146.6. There is nothing in the record showing that PRSI(CT) ever obtained approval to operate Subzone 84-N.
PRSI(CT) argues that it was still activated during the relevant tax years because CBP did not deactivate it until August 23, 2013.[7] However, if Subzone 84-N was still activated, as PRSI(CT) contends, then CBP would not have required PRSI(CT) to apply for approval of a new activation. Moreover, we note that PRSI(CT)'s position contradicts other evidence in the record. As an exhibit to its response to PRSI's and HCAD's cross-motions for summary judgment and its reply to their responses to Harris County's motion for summary judgment, Harris County attached the affidavit of Shane M. Williams, the FTZ administrator for the Port of Houston. In paragraph nine of his affidavit, Williams states, "On February 8, 2010, the Port Authority acknowledged to CBP the deactivation of subzone 84-N, in the absence of an authorized subzone operator, and confirmed that it continued to decline to concur with Pasadena Refining CT's activation request."
PRSI also argues that CBP's temporary authorization of PRSI(CT)'s operation on a month-to-month basis is evidence that the subzone was "activated" during the applicable tax years.[8] These letters from CBP to PRSI(CT) granting an extension to operate, or a continuation to operate, Subzone 84-N are not evidence that the subzone was "activated," nor do they purport to "activate" the subzone during this period as required by federal regulations. CBP consistently declined to "activate" the subzone absent written consent of the *85 grantee, i.e., the Port of Houston. See 19 C.F.R. § 146.6(b)(5).
Without activation of Subzone 84-N pursuant to approval of a new operator, PRSI's inventory could not have been properly admitted into the subzone, and, thus, was not entitled to exemption from ad valorem taxation. See 15 C.F.R. § 400.1(c) ; 19 C.F.R. §§ 146.1(b), 146.6(e) ; see also FOREIGN TRADE ZONES MANUAL , at ¶ 4.1 ("Only after the approval of activation will Users gain the benefits conferred under the [Foreign Trade Zones] Act.")
D. Are CBP's Letter Rulings Entitled to Preclusive Effect Under the Doctrine of Collateral Estoppel?
Harris County also contends that CBP's letter rulings are entitled to preclusive effect under the doctrine of collateral estoppel. PRSI argues that CBP's decision requiring activation of the FTZ does not resolve the issue before us because Harris County has not satisfied all of the requirements of collateral estoppel.
Collateral estoppel, or issue preclusion, "prevents relitigation of particular issues already resolved in a prior suit." Barr v. Resolution Trust Corp. , 837 S.W.2d 627, 628 (Tex. 1992). It is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. Sysco Food Servs., Inc. v. Trapnell , 890 S.W.2d 796, 801 (Tex. 1994).
To establish collateral estoppel, a party must show that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." Id. Collateral estoppel applies to administrative agency orders "when the agency is 'acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' " Turnage v. JPI Multifamily, Inc. , 64 S.W.3d 614, 620 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (quoting Muckelroy v. Richardson Indep. Sch. Dist. , 884 S.W.2d 825, 830 (Tex. App.-Dallas 1994, writ denied) ); see also B & B Hardware, Inc. v. Hargis Indus., Inc. , --- U.S. ----, 135 S.Ct. 1293, 1303, 191 L.Ed.2d 222 (2015) ("[W]here a single issue is before a court and an administrative agency, preclusion [ ] often applies."). Further, "collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action." Union Pac. R. Co. v. Ameriton Properties Inc. , 448 S.W.3d 671, 682 (Tex. App.-Houston [1st Dist.] 2014, pet. denied) (citing Mann v. Old Republic Nat'l Title Ins. Co. , 975 S.W.2d 347, 350 (Tex. App.-Houston [14th Dist.] 1998, no pet.)).
PRSI first argues that CBP's letter rulings addressed only whether PRSI(CT) was a new operator and not whether PRSI(CT) was entitled to an FTZ exemption. Thus, it claims, the issue decided by CBP is not identical to the issue in this case. However, CBP's September 21, 2009 letter ruling, and its August 12, 2013 letter ruling affirming its holding, resolved the issue of whether PRSI(CT) was a new operator and whether a new activation was required. In the case before us, the issue is whether Subzone 84-N had an authorized operator during the relevant tax years and whether the subzone was activated, thereby authorizing an FTZ tax exemption. PRSI's failure to obtain an FTZ exemption flows from application of federal regulations by the relevant federal authority as memorialized in the CBP letter rulings. See 15 C.F.R. § 400.1(c) ; 19 C.F.R. §§ 146.1(b), 146.6(e). The issue ruled on by CBP is identical to the issue before us.
PRSI next argues that CBP's decision was not the product of a judicial proceeding *86 because there was no judge, witnesses or other sworn evidence, right of discovery, or hearing. However, we are unaware of any authority-nor does PRSI direct us to any-holding that an administrative agency's proceedings must take a particular form in order for the agency to be acting in a judicial capacity. See Alten v. Ellin & Tucker, Chartered , 854 F.Supp. 283, 291 (D. Del. 1994) ("[W]hether an administrative agency was 'acting in a judicial capacity' is not solely determined by whether the administrative agency used such judicial procedures as 'the ability to call, examine, cross-examine, and subpoena witnesses.' ") (citing A. Duda & Sons Co-op. Assoc. v. United States , 495 F.2d 193, withdrawn , 504 F.2d 970 (5th Cir. 1974) ). Here, CBP issued two letter rulings, widely separated in time, which consistently set forth the relevant facts, applicable law, the issue before it, its legal analysis, and its holding. PRSI also had the opportunity to seek judicial review of CBP's rulings in the Court of International Trade but did not do so. See Conoco, Inc. v. U.S. Foreign-Trade Zones Board , 18 F.3d 1581, 1590 (Fed. Cir. 1994) ; B & B Hardware , 135 S.Ct. at 1310, (noting Congress's provision of judicial review of Patent and Trademark Office registration rulings in deciding that "registration decisions can be weighty enough to ground issue preclusion"). We conclude that CBP acted in a judicial capacity in issuing its letter rulings.
PRSI also contends that CBP never addressed the FTZ tax exemption issue and, therefore, it was not essential to CBP's decision. See Trapnell , 890 S.W.2d at 801 (noting that, to establish collateral estoppel, party must establish that facts sought to be litigated in second action were essential to judgment in first action). However, as discussed above, the issue presented in this case is not the FTZ tax exemption; rather, it is whether Subzone 84-N was activated during the relevant tax years thereby authorizing a tax exemption. The facts underlying this issue are precisely the facts that CBP considered in its opinions and that were essential to its letter rulings.
Finally, PRSI contends that collateral estoppel is inapplicable in this case because Harris County was not a party to CBP's proceedings. Strict mutuality of parties is not required for collateral estoppel. See Sysco Food , 890 S.W.2d at 801. Instead, it is only necessary that the party against whom the doctrine is asserted (i.e., PRSI) was a party or in privity with a party in the first action. Id.
We conclude that the summary judgment evidence demonstrates, as a matter of law, that the FTZ tax exemption does not apply to PRSI's inventory during the applicable tax years. See Bullock , 584 S.W.2d at 272 ("An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of [the] taxing authority and against the claimant.") Therefore, PRSI and HCAD were not entitled to summary judgment. Because we also conclude that the FTZ exemption does not apply to PRSI's inventory, Harris County was entitled to summary judgment. Accordingly, we sustain Harris County's issue.
Conclusion
We reverse the trial court's April 20, 2016 order granting summary judgment to PRSI and HCAD and denying Harris County's motion for summary judgment, and we render judgment in favor of Harris County.

See Tex. Tax Code Ann. § 42.031 (West 2015).

PRSI(CT) argued that it should not be considered a new operator as a result of its merger and creation from PRSI(DE) because the assets, liabilities, and the officers were the same, and the ultimate parent remained the same. It further argued that Astra Oil Trading NV's sale of half of its shares in PRSI(CT) to Petrobas America Inc. did not result in assets being transferred, and that the sale of stock did not necessitate an application for activation.

Effective July 1, 2006, the Port of Houston implemented a new policy under which it would not concur in CBP's approval of a new operator unless it received a letter of non-objection from Harris County. Such a letter has not been forthcoming for this FTZ.

A "grantee" is a public or private corporation to which the privilege of establishing, operating, or maintaining a zone project has been given. See Foreign Trade Zones Manual , at ¶ 2.3(a).

The "port director" is the local representative of the FTZ Board. Id. at 2.2(e)(2).

An "operator" is a corporation, partnership, or person that operates a FTZ or FTZ subzone under the terms of an agreement with the grantee. Id. at 2.3(b).

The dissent interprets the FTZ Manual to the effect that a free trade zone continues to exist until it is "deactivated." However, the activation of an FTZ is neither a grant of eternal life nor a sentence of perpetual involuntary servitude. The relevant federal regulation which authoritatively addresses "deactivation" is 19 C.F.R. § 146.7. That section is entitled "Zone Changes" and provides a mechanism for an operator to make "alterations of an activated area." 19 C.F.R. § 146.7(a). Alteration of "an activated" area includes the ability of the operator to cease business in, or deactivate, the zone. See itation index="50" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.7">id. (b). There are requirements for deactivation, such as removing merchandise from the area, and the deactivation must be finally approved by the port director. See ion index="51" url="https://cite.case.law/citations/?q=19%20C.F.R.%20%C2%A7%20146.7">id. This section address the steps that the operator must take to walk away from an active zone. It does not change the requirements for the creation, and continued existence, of an active zone.

Next to the portion of its summary judgment order granting PRSI's and HCAD's motions, the trial court made the following handwritten notation "See, e.g., Mattson affidavit at ¶ 15 and Exhibits 7 and 8 attached thereto." This evidence refers to CBP's letters granting PRSI an extension of time to operate Subzone 84-N.