FARRELL LINES, INC., Petitioner,

v.

FEDERAL MARITIME COMMISSION
and the United States of America,
Respondents.

No. 72–1644.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1973.
Decided March 23, 1973.

Edward Aptaker, Washington, D. C., with whom Edward J. Sheppard, IV, Washington, D. C., was on the brief, for petitioner.

John Robert Ewers, Atty., Federal Maritime Commission, with whom James L. Pimper, General Counsel, Edward G. Gruis, Deputy General Counsel, Federal Maritime Commission, and Irwin A. Seibel, Atty., Department of Justice, were on the brief, for respondents.

Before LEVENTHAL and ROBB, Circuit Judges, and OLIVER GASCH,* United States District Judge for the United States District Court for the District of Columbia.

PER CURIAM:

Petitioner Farrell Lines challenges an order of the Federal Maritime Commission, approving Agreement No. 9944. Agreement No. 9944 is a Joint Service Agreement filed with the Commission by Refrigerated Express Lines (REL) and Maritime Fruit Carriers Co. (MFC). REL and MFC are both members of the Australia/U.S. Atlantic and Gulf Conference. Farrell Lines is also a member. Under the Agreement REL and MFC remain separate corporate entities but are in effect united in one commercial entity, sharing all profits and losses, and coordinating their shipping schedules. The argument of Farrell Lines focuses on Section 3 of the Agreement which permits REL and MFC to retain their individual voting rights within the Con-

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1970).

ference. Farrell Lines argues that this provision, giving the REL-MFC combination two votes, is unjustly discriminatory as between the combination and the other members of the Conference, each of which has one vote. If this contention is valid the Commission is required by 46 U.S.C. § 814 (1970) to withhold approval of the Agreement.

We affirm the decision of the Commission but remand for modification of its final order.

The Conference is presently composed of six members. Three of the members, Atlanttrafik, REL, and MFC operate conventional and palletized ships.[1] The remaining three members, Farrell Lines, Pacific America Container Express Line (PACE), and Columbus Line, now or in the near future will employ only containerships as cargo vessels.[2] Within the six-member Conference a unanimous vote is required to amend any provision of the Conference Agreement, while a three-quarters vote is necessary in all other matters.

■ Farrell Lines contends that Section 3 of the Agreement is inherently discriminatory because it gives two out of six votes, amounting to a veto power, to the commercial entity composed of REL and MFC. Although the reason why such an entity should have more than one vote is not immediately apparent to us, we note that Commissioner Morse in his concurring opinion cites several instances in which the Commission has approved joint service agreements without restricting the number of votes allocated to the members of the joint services. Moreover, the Commission found no evidence of danger that in this case the grant of two votes to the REL-MFC entity would result in harmful discrimination. The Commission in its Report (J.A. 50) explained further:

Conference voting mechanisms are at best delicate things, presumably arrived at after due deliberation of alternatives. By and large the various procedures, and they cover a wide range, work well when considered in the light of the large number and variety of agreements existing in our foreign commerce. These considerations, when taken with the continuing change in carrier relationships, trade conditions and economic and competitive circumstances, makes us on the one hand cautious in the interference with existing voting procedures absent a showing of need; and on the other, makes it extremely difficult to formulate hard and fast rules for the governance of future voting procedures. (Federal Maritime Commission Report, Docket No. 71–80, page 6 mimeographed copy, Served May 8, 1972.)

We think that in light of the Commission's experience and specialized knowledge in the field of conference voting rights the challenged approval was within the limits of its discretion; at least we cannot say that the Commission has acted arbitrarily or unreasonably in the exercise of its judgment. Certainly "[i]t is part of the genius of the administrative process that its flexibility permits adoption of approaches subject to expeditious adjustment in the light of experience." American Airlines v. CAB, 123 U.S.App.D.C. 310, 319, 359 F.2d 624, 633 (1966); *cf.* Airline Pilots Ass'n v. CAB, 154 U.S.App.D.C. ——, at ——, 475 F.2d 900, at 904 (decided January 4, 1973).

■ The Commission concluded that the Agreement might become " * * *

---

1. Conventional ships are ships which carry cargo which is separately packed and stowed in the hold of the ship. Palletized ships are ships which carry cargo which is separately packed and then arranged on a pallet before loading into the vessel. Conventional and palletized ships are the traditional methods of handling cargo.

2. Containerships are vessels in which the cargo is carried preloaded in containers usually 8′ x 8′ x 40′ or 8′ x 8′ x 20′. Instead of the traditional cargo hold arrangement the containership hold is fitted with container guides into which the preloaded containers are fitted.

unfair as between carriers only in a particular and given circumstance * * * the circumstance is the impact [of] voting status on conference operations." (J.A. 50). Counsel for the Commission informed us at oral argument that any complaint of unfairness resulting in the future from the impact of voting status would require the filing of a new petition and the opening of a new docket. We believe, however, that such a procedure may not be adequate to assure that there will be "expeditious adjustment" for the protection of the members of the Conference if experience reveals that the Agreement is working unfairness. We think the Commission should retain jurisdiction over the matter so that it may act expeditiously to modify or terminate the Agreement if unfairness in its operation appears. We remand the case to the Commission with instructions to modify its order accordingly; otherwise the order is affirmed.

It is so ordered.